## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARY INMAN,                                   )
                                              )
              Plaintiff,              )
                                              )
          v.                              )        19 C 5282
                                              )
LEMONT PUBLIC LIBRARY DISTRICT,               )
                                              )
              Defendant.              )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge**:

Before the Court is Defendant Lemont Public Library's ("Lemont Library") Motion to Dismiss Plaintiff Mary Inman's ("Inman") Amended Complaint. For the following reasons, the Court will grant the motion.

## BACKGROUND

### A. Factual Background

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Inman's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff Inman is a 56-year-old woman living in Will County, Illinois. Defendant Lemont Library is a public library district located in Cook County, Illinois.

Inman was a librarian at Lemont Library for over thirty years where she helped facilitate the library's children's programs. Inman alleges that while employed at Lemont Library, Sandra Pointon ("Pointon"), the Director of Lemont Library, created a hostile work environment, discriminated against Inman because of a disability, did not reasonably accommodate her disability, and discriminated against her based on her age. Inman alleges that she is disabled because of her need for two knee replacement surgeries which made it difficult for her to walk.

The core of Inman's Amended Complaint includes several incidents starting in September 2017 and continuing through August 6, 2018, when Inman's employment was terminated. In September 2017, Inman knew that she would need left and right knee replacement surgeries because her knees were deteriorating. Pointon found out about this and acted annoyed and inpatient. In October 2017, Inman spoke with Pointon about why she was not invited to a library conference. Pointon replied: "Oh, I didn't think that you would be able to get around." Pointon also failed to respond to Inman's request to attend a different continuing education seminar and a meeting of local children's librarians which she had previously attended.

Later in 2017, Pointon suggested that Inman "get a scooter" to help her move about the library. Rather than using a scooter, Inman used a red library book cart and two canes to help her move. Inman tried to conceal her use of the red book cart by putting library materials on the book cart while she worked and by trying to use only one cane while engaging with the public.

2

Pointon also directed Inman to not solicit help from co-workers. Pointon specifically made a request by email to library staff telling the staff not to help Inman move her personal vehicle in the parking lot. Additionally, in her EEOC Charge Inman alleges that Pointon directed library staff to no longer bring Inman coffee and tea.[1] These actions were described by one of Inman's coworkers as bullying. Inman also alleges that she had a discussion with a coworker which led her to believe that she would be fired.

In 2018, Pointon provided Inman with a written disciplinary action which read: "You are not keeping track of your time off (or requesting time off) in a consistent, timely manner." Inman later received an "Action Plan" which required Inman to meet with Pointon on a weekly basis to review her work performance. As Inman was absent from work for about six weeks following her first surgery on March 16, 2018, these weekly meetings did not take place as planned. Around the same time, Pointon hired a younger person, Marchand Hernandez ("Hernandez"), who took over some of Inman's work responsibilities.

In April 2018, Inman was told by the Illinois Municipal Retirement Fund ("IMRF") that Pointon had unilaterally submitted a temporary disability application without first discussing it with Inman. Inman contacted IMRF to note that she did not see herself as disabled under the IMRF plan. Rather than using the plan, Inman

---

[1] Inman's EEOC Charge was attached to the complaint and is, therefore, considered part of the complaint. *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

3

preferred to use vacation and sick days to account for her absence from work. At the same time, Inman, who herself now notes her own disability, expressed frustration that Pointon saw her as falling under the terms of the IMRF policy.

Following her first knee surgery, Inman returned to work and told Pointon that she needed an accommodation for another surgery on her other knee. Pointon responded: "We'll see."

Pointon continued to raise time management issues with Inman and starting around May 2018 required that Inman use a punch time clock even though Inman had some managerial duties at the library. Around the same time, Pointon would yell criticisms of Inman across the library which caused library patrons to privately express concern to Inman.

Inman continued to use the red book cart to move about the library throughout 2018. When Inman arrived to work in the morning, the red book cart was not always where Inman left it. Inman alleges that Pointon directed the maintenance technician to remove the red book cart from the library altogether. The maintenance technician did not comply and retained the cart in the library's basement.

Inman alleges that Pointon directed her coworkers to observe her and record her actions. At least one coworker did not follow Pointon's direction. Pointon also installed a surveillance security camera near the Children's Activity Center where Inman worked. That summer, Pointon refused to replace Inman's broken desk chair.

Following these events, Inman's employment was terminated on August 6, 2018. Lemont Library replaced Inman with a significantly younger person named Rachel Cooley ("Cooley").

## B. Procedural Background

Based on these facts, Inman first filed a Charge of Discrimination with the EEOC on February 1, 2019, which was cross-filed with the Illinois Department of Human Rights ("IDHR"). The EEOC issued Inman a right-to-sue letter on May 15, 2019, and the IDHR issued a right-to-sue letter on July 19, 2019. Inman filed suit in this Court on August 05, 2019. Inman filed her Amended Complaint on March 2, 2020.

The Amended Complaint alleges: a hostile work environment based on Inman's disability under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") (Count I); failure to accommodate under the ADA (Count II); disparate treatment based on disability under the ADA (Count III); age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") (Count IV); and pendant state law claims based on the federal claims under the Illinois Human Rights Act, 775 ILCS § 5-1/101 et seq. ("IHRA") (Count V).

Lemont Library moved to dismiss Counts I, II, IV, and V under Federal Rule of Civil Procedure 12(b)(6) on June 8, 2020.[2]

---

[2] Lemont Library does not move to dismiss Count III.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendant urges the Court to dismiss Counts I, II, and IV of the Amended Complaint, arguing that these counts fail to state a claim for discrimination under either the ADA or the ADEA. Defendant also moves to dismiss Count V if the Court dismisses Counts I, II, and IV. Inman argues that she sufficiently stated claims under

6

the ADA and ADEA. In the alternative, Inman seeks leave to file a Second Amended Complaint. We address each argument in turn.

## 1. Motion to Dismiss

### I. Count I—ADA Hostile Work Environment

"The same standard governs hostile work environment claims under the ADA as under other employment discrimination laws." *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019).[3] Thus, to adequately plead an ADA hostile work environment claim, a plaintiff must allege that (1) she was subject to unwelcome harassment; (2) the harassment stemmed from her disability; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Bakker v. Mokena Fire Prot. Dist.*, 2020 WL 1139262, at *3 (N.D. Ill. 2020) (citing *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019).

Inman's chief allegations in her hostile work environment claim include that (1) Inman's coworkers were instructed not to assist Inman by, for example, moving her personal vehicle or bringing her coffee or tea; (2) Inman was prevented from using a red book cart to move about the library and that a maintenance technician was told to remove the cart; (3) Inman needed to use a punch clock to keep track of her work time;

---

[3] Inman's contention that Lemont Library's failure to seek dismissal of Count III somehow bolsters her hostile work environment claim is incorrect because hostile work environment claims and specific adverse employment action claims "require proof of different factual circumstances under different legal tests." *Ford*, 942 F.3d at 850.

(4) Pointon would berate and yell criticisms at Inman; (5) Pointon installed one more surveillance camera and instructed coworkers to observe Inman; (6) Pointon hired another younger employee—Hernandez—while Inman was still working; (7) Pointon failed to invite Inman to attend professional development events while making negative offhand remarks; (8) Pointon submitted a temporary disability application without first consulting Inman; and (9) Pointon refused to replace Inman's broken chair.

Lemont Library argues that Inman does not adequately allege the second and third elements—whether Inman suffered harassment because of her disability that was severe or pervasive enough to alter the conditions of her employment and create a hostile or abusive working environment. We address each element in turn.[4]

### a. Harassment Because of Disability

Lemont Library argues that Inman's allegations are largely not a product of her disability and therefore fail to state a claim upon which relief can be granted. We agree.

Under the second element of an ADA hostile work environment claim, Inman must allege that the harassment stemmed from her disability. *Bakker,* 2020 WL 1139262, at *3. On this basis, most of Inman's allegations fail to adequately state a claim.

---

[4] The Court notes that Inman largely fails to respond to Lemont Library's specific arguments in support of dismissal. Since the Court cannot consider the arguments she could have made, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011), we therefore will consider Lemont Library's arguments against the scant information Inman has provided.

For example, Inman alleges that Pointon would berate or yell at Inman across the library but does not specify how these criticisms are linked to her disability. Indeed, Inman does not even specify what the criticisms were. Because these unspecified criticisms lack a discriminatory "character or purpose," *Vance v. Ball State Univ.,* 646 F.3d 461, 470 (7th Cir. 2011), *aff'd*, 570 U.S. 421 (2013), they cannot contribute to Inman's hostile work environment claim. *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir. 1999).

Pointon's installation of one additional surveillance camera, as pled, is also not plausibly linked to Inman's disability. If anything, *not* installing a surveillance camera could have exposed Lemont Library to greater legal liability for failing to use a reasonable tool which can prevent employee harassment. *See May v. Chrysler Group, L.L.C.*, 716 F.3d 963, 972-73 (7th Cir. 2013) (describing an employer's failure to install a security camera as a basis for a jury to find an employer liable for not stopping ongoing harassment). Nor is Inman's contention about Pointon's failure to replace a broken chair, as pled, imbued with any non-speculative discriminatory character or purpose that is sufficient to state a claim for relief.

Inman's next contention about Pointon's requirement that Inman use a time punch clock for time management issues likewise does not have a non-speculative connection to Inman's disability. This is because "[t]he ADA does not protect persons who had erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance . . . is a basic requirement of most

jobs." *Stelter v. Wis. Physicians Serv. Ins.,* 950 F.3d 488, 491 (7th Cir. 2020) (quoting *Waggoner v. Olin Corp.,* 169 F.3d 481, 484 (7th Cir. 1999)).

For these reasons and taken collectively, Inman's Amended Complaint largely fails to allege that Lemont Library's actions were based on her disability. Dismissal is therefore warranted.

### b. Severe or Pervasive Conditions

Lemont Library next argues that the alleged conduct was insufficiently severe or pervasive to state a hostile work environment claim under the ADA. We agree.

To state a hostile work environment claim, the alleged conduct must be severe or pervasive. *Bakker,* 2020 WL 1139262, at *3. Though the severe *or* pervasive requirement is disjunctive, *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013), "petty workplace slights" that do not represent "significant negative alterations in the workplace" or have "tangible consequences" are not actionable. *Parks v. Speedy Title & Appraisal Review Servs.,* 318 F. Supp. 3d 1053, 1062 (N.D. Ill. 2018) (quotation omitted). Severe or pervasive conduct includes both subjective and objective components. *Bakker,* 2020 WL 1139262, at *3 (citing *Rodgers v. Western- S. Life Ins. Co.,* 12 F.3d 668, 674 (7th Cir. 1993). The objective component is chiefly at issue here because the Amended Complaint alleges a subjective harm.

Objective hostility is a "high bar" to meet in the Seventh Circuit. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). The Court "assume[s] employees are generally mature individuals with the thick skin that comes from living in the modern

world." *Id.* (citing *Passananti v. Cook Cty.,* 689 F.3d 655, 667 (7th Cir. 2012)). "As a result, employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Id.* Rather, conduct must "permeate[]" the workplace with "discriminatory intimidation, ridicule, and insult" that "create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

In evaluating Inman's allegations objectively, the Court "look[s] to the totality of the circumstance and ask[s] whether everything together constitutes a hostile or abusive environment." *Swyear*, 911 F.3d at 881. The Court "must consider the severity of the alleged conduct, its frequency, whether it is physically threatening or humiliating (or merely offensive), and whether it unreasonably interferes with the employee's work performance." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). We consider the evidence "as a whole [,]" noting which evidence is relevant and which is not. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Against this legal backdrop, we conclude that Inman's Amended Complaint falls short of the "high bar" necessary to satisfactorily plead an ADA hostile work environment claim. Indeed, taken collectively and as true, Inman's allegations fail to alter the "entire context of the workplace" and to state a claim upon which relief can be granted. *Cerros v. Steel Techs., Inc.,* 288 F.3d 1040, 1046 (7th Cir. 2002).

For example, Inman's allegations that Pointon required her to use a time punch card do not satisfy the high bar required for a hostile work environment claim. This is

in part because excessive scrutiny of an employee's work or warning an employee about attendance problems is not alone enough to permeate a workplace with "discriminatory ridicule, intimidation, or insult" such that there is a hostile work environment. *Matthews v. Donahoe*, 493 F. App'x 796, 800 (7th Cir. 2012). In addition, tardiness that forms a "recurring pattern of conduct" can provide a non-discriminatory basis for an employer to discharge an employee. *Guzman v. Brown Cty.,* 884 F.3d 633, 642 (7th Cir. 2018). Under this precedent, Inman fails to state a claim because this conduct is not severe or pervasive enough to permeate the entire workplace. Inman also does not allege that Pointon at any point denied her time off; in fact, Inman concedes that she could take six weeks off for her first knee replacement surgery.

We further agree with Defendant's characterization that the totality of Inman's Amended Complaint better describes a sullied relationship with a supervisor—not severe or pervasive hostility that altered the terms of Inman's employment. For example, Pointon's instructions to library staff to not help Inman move her personal vehicle and to not bring Inman coffee and tea are more consistent with a managerial decision about potential legal liability rather than actions borne from discriminatory character or purpose. *See, e.g., Vancura v. Katris,* 238 Ill. 2d 352, 375 (2010) (discussing vicarious tort liability); *Casiano v. AT&T Corp.,* 213 F.3d 278, 280 (5th Cir. 2000) (discussing a harassment claim including that a senior employee asked plaintiff "to bring her personal items such as drinks and food"). No portion of Inman's Amended Complaint persuades the Court that either of these actions has a non-

12

speculative connection to Inman's disability or that they are collectively sufficiently severe or pervasive.

Inman also alleges that Pointon made an off-hand comment when failing to invite her to a conference. Pointon remarked: "Oh, I didn't think that you would be able to get around." Though Pointon may have acted inconsiderately, the ADA "is not a general code of civility [;] therefore [,] teasing and the voicing of offhand comments are not sufficient to constitute a cause of action[.]" *Holmes v. Hous. Auth. of Joliet*, 2015 WL 1826676, at *4 (N.D. Ill. 2015) (Kocoras, J.) (dismissing Title VII hostile work environment claim where seven comments including one referring to plaintiff as "pretty baby" were insufficient to establish severity or pervasiveness). That these unspecified comments could have been rude or subjectively problematic does not make them actionable because "the discrimination laws do not mandate admirable behavior from employers." *Russell v. Bd. of Trustees of Univ. of Ill.*, 243 F.3d 336, 343 (7th Cir. 2001); *see also Boebel v. Combined Ins. Co.*, 2004 WL 144135, at *4, 6 (N.D. Ill. 2004) (plaintiff's allegations that supervisor "constantly screamed at, demeaned, and criticized" her did not survive summary judgment).

We also disagree that Pointon's unilateral submission of a temporary disability application to the IMRF for a six-week prolonged absence rises to the level of an incident that impermissibly permeates the entire workplace when viewed together with the other alleged incidents. Inman sought to take several weeks off from work, and it is reasonable to assume that the normal accrual of vacation and sick days would not

13

cover that absence. When viewed in the light most favorable to Inman, Pointon's behavior was neither offensive nor harassing, but reasonable conduct for an employee who would take six weeks off from work for a major surgery.

That Inman was not allowed to use the red book cart to move about the library fails for the reasons discussed below in the Court's disposition of Inman's failure to accommodate claim. In brief, because the book cart is intended to transport *books*, not people, it is reasonable for Pointon to restrict its use to book transportation. Inman also does not allege that she affirmatively requested the red book cart as a reasonable accommodation. As the Court also discusses in greater depth below, this too makes her claim one for which relief cannot be granted under the ADA. Furthermore, Pointon's suggestion that Inman use a scooter for mobility, if anything, is a sign of respect for Inman's mobility issues, not an attempt to discriminate against Inman. Accordingly, the Court concludes that Inman has not pled a non-speculative—let alone a plausible—claim based on a hostile work environment under the ADA.

The Seventh Circuit's decision in *Joll vs Valparaiso Community Schools* does not alter our conclusion here. 953 F.3d 923, 924 (7th Cir. 2020). In *Joll*, the Seventh Circuit reversed the dismissal of a sex discrimination claim where the district court asked, "whether any particular piece of evidence proves the case by itself," rather than aggregating the evidence "to find an overall likelihood of discrimination." *Id.* (quotation omitted). In line with *Joll*, the Court is mindful to aggregate the evidence here. In doing so, we conclude that Inman has insufficiently pled an overall likelihood of

14

discrimination both because most of the incidents do not relate to her disability and because the alleged conduct is infrequent, insufficiently severe, not physically threatening, and does not unreasonably interfere with Inman's work performance. Our conclusion is particularly warranted when viewed against the high bar established for hostile work environment claims in the Seventh Circuit. Additionally, we note that our cumulative analysis about the overall likelihood of discrimination would be imperfect without first engaging in some narrow assessment of the individual factual allegations to determine whether they rise above mere conjecture. *Cf. Swyear*, 911 F.3d at 881-883 (discussing individual allegations before considering the totality of the circumstances).

*Hall vs. City of Chicago* also does not change our conclusion. 713 F.3d 325 (7th Cir. 2013). In *Hall*, the Seventh Circuit reversed the district court's grant of summary judgment where a plaintiff was asked to review useless videotapes, her colleagues were forbidden from speaking to her, she was prohibited from attending workplace meetings, was not allowed to take on additional work, and was subject to verbal outbursts, and a minor physical altercation. *Id.* at 331. The instant case is distinguishable. First, far from being isolated from the library, Inman's Amended Complaint reflects active interaction with other library employees. Notably, in *Hall*, the Seventh Circuit stressed Hall's isolation and noted that it made Hall a "pariah" "undeserving of human interaction." *Id.* There is no allegation here that Inman was similarly made a pariah. Second, the incidents in *Hall* possess an alleged discriminatory gender-based animus.

15

Specifically, Hall overheard her supervisor saying, "I ought to slap that woman sitting out there," that "I could slap that woman and get a promotion," and that "I ought to go postal on that woman," about Hall. *Id.* at 329. Third, unlike Hall, Inman does not allege physical contact which is one of many indicia of a hostile workplace. *See id.*; *see also Swyear*, 911 F.3d at 881 (discussing conduct that is "physically threatening or humiliating"). For these reasons, the Court finds Hall insufficient to alter its fact-specific conclusion about Inman's Amended Complaint.

Although we acknowledge that "whether a work environment is hostile is not susceptible to a mathematically precise test," *Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 958 (7th Cir. 2009), we note that courts routinely have found conduct worse than that at issue here insufficient to establish a hostile workplace. *See, e.g.*, *Sowers v. VVF Ill. Servs., L.L.C.*, 2019 WL 1923407, at *4 (N.D. Ill. 2019) (collecting cases); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991 (N.D. Ill. 2016) (same); *McDaniel v. Loyola Univ. Med. Ctr.*, 2014 WL 4269126, at *7 (N.D. Ill. 2014) (same); *Triplett v. Starbucks Coffee*, 2011 WL 3165576, at *7 (N.D. Ill. 2011) (same).

At bottom, Inman's hostile work environment allegations fails to state a claim upon which relief can be granted because of their attenuated connection to her disability and Inman's failure to allege that Pointon's conduct is severe or pervasive enough to actually alter the terms of her employment. Although the severity or pervasiveness of conduct is generally a fact question, *Passananti*, 689 F.3d at 669, Inman has not established her entitlement to discovery at this stage. This is especially true because

16

discovery is less necessary to accurately document experiences that Inman has personally observed. *See Ross v. UChicago Argonne, L.L.C.*, 2019 WL 3562700, at *5-7 (N.D. Ill. 2019). Accordingly, Count I is dismissed.

## II.    Count II—ADA Reasonable Accommodation

Lemont Library argues that Inman has failed to adequately allege a failure to accommodate claim because the library reasonably accommodated Inman's disability by suggesting that she use a scooter instead of a red library book cart for personal transportation. We agree.

Under the ADA, an employer's failure to make a reasonable accommodation constitutes prohibited discrimination. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). To state a failure to accommodate claim, Inman must allege that: (1) she is a qualified individual with a disability; (2) Lemont Library knew of her disability; and (3) that Lemont Library failed to reasonably accommodate her disability. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013). Generally, an employer must only provide "*some* reasonable accommodation." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) (emphasis added). The employer need not provide an employee with the specific accommodation she "requests or prefers." *Id.*

At the outset, the Amended Complaint does not assert that Inman requested to use the red book cart as a reasonable accommodation. Absent some form of proactive request by Inman to Pointon, Inman's claim fails even if the library had some general knowledge about Inman's knee replacement surgeries. *See Preddie v. Bartholomew*

*Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (concluding that a failure to accommodate claim does not survive summary judgment where the employee did not affirmatively request an accommodation even though the employer may have had some knowledge of the disability).

Moreover, as pled, Inman was told that she could use a scooter to move about the library. In response, Inman "was required to at least allege facts supporting a plausible inference that Defendant's proposed alternative was insufficient or ineffective." *Miller v. McHugh*, 2016 WL 698147, at *5 (S.D.N.Y. 2016) (granting a motion to dismiss and denying leave to amend for a reasonable accommodation claim concerning a scooter for mobility issues). Inman did not do so here, and her allegations accordingly fail. This conclusion is especially reasonable and fair because a scooter is a widely acknowledged remedy for a person with mobility issues. So too is a cane which Inman at times relied on while at the library.

Lemont Library also does not have to allow Inman to use a library-owned book cart for her own personal mobility needs. On this point, we agree with the Third Circuit's reasoning in *Tielle v. Nutrition Grp.,* 810 F. App'x 160 (3d Cir. 2020). In *Tielle*, the Third Circuit rejected an employee's reasonable accommodation claim where the employee sought to use a food cart to move about and where an employee asked and was subsequently allowed to use a cane instead. *Id.* at 162. To support its conclusion, the Third Circuit sensibly reasoned that a food cart was not intended to be a personal mobility device. *Id. Tielle* supports the Court's conclusion here. In short,

canes and scooters are both reasonable solutions for people with mobility issues. Book carts generally are not.

Inman's argument about the "interactive process" does not salvage her claim for which relief cannot be granted, because a failure of the "interactive process" "is not itself actionable." *Ford*, 942 F.3d at 855; *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000) ("the interactive process is not an end in itself"). To the contrary, Inman must "allege that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for" Inman. *Rehling,* 207 F.3d at 1016. But, as pled, no such failure occurred here. Instead, Pointon suggested that Inman use a scooter to move about the library, and the Amended Complaint is devoid of allegations that Inman was somehow prevented from using a scooter—or a cane—to assist her movement. While the fact that Pointon did not discuss with Inman the submission of a disability application to IMRF might establish one isolated unilateral action, it does not here adequately allege a failure of the interactive process sufficient to state a claim for relief. Accordingly, Count II is dismissed.

## III.    Count IV—ADEA

Lemont Library argues that Inman fails to state a claim under the ADEA because Inman's allegations of age-based discrimination do not rise above mere speculation. We agree.

The ADEA makes unlawful the discharge of an individual because of their age. 29 U.S.C. § 623(a)(1). Pleading unlawful age discrimination requires a plaintiff to

allege that "she would not have received adverse treatment but for her employer's motive to discriminate on the basis of her age." *Alexander v. Cit Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 887 (N.D. Ill. 2002) (citing *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir. 1996)).

In support of this allegation, Inman, a fifty-six-year-old woman, makes two primary assertions. First, that in 2017 Pointon hired a younger woman—Hernandez—who "eventually took over some of Inman's work responsibilities." And second, that after the termination of Inman's employment, Pointon hired Cooley—also a younger person. Together, we conclude that these allegations do not raise more than a speculative claim for relief.

First, that another younger individual was hired after Inman's employment was terminated does not adequately state an age discrimination claim. Specifically, "there must be some connection [to age] for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee [is old]." *Cole v. Board of Trustees of N. Ill. University*, 838 F.3d 888, 896 (7th Cir. 2016) (quotation omitted). And, while an "imaginative reader" might speculate about ageist motivations, speculation is not enough to survive a motion to dismiss. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010); *see also Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, 2013 WL 6730885, at *7 (N.D. Ill. 2013) (dismissing an ADEA discrimination claim where an employee alleged, among other things, that she was replaced by a younger employee).

And second, the mere hiring of another younger individual while Inman was working as a librarian who then took over some of Inman's responsibilities fails to move Inman's age discrimination claim past mere speculation. Nor is it at all clear here that the reduction of *some* of Inman's responsibilities constitutes an adverse employment action. "Not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Indeed, adverse employment actions are "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) (internal citation omitted).

Inman does not allege that her career prospects were hurt by the hiring of Hernandez at the Lemont Library; she does not allege a reduction in pay or a demotion; nor does she allege which of her responsibilities were diminished. Inman's claim is therefore insufficiently pled. *See McCurry v. Kenco Logistics Servs.*, 2018 WL 10321877, at *6 (C.D. Ill. 2018) (rejecting the contention that a "minor reduction in duties" rose to the level of a materially adverse employment action and denying summary judgment where plaintiff alleged merely that a younger person replaced plaintiff), *aff'd*, 942 F.3d 783 (7th Cir. 2019).

In sum, Lemont Library is largely correct that Inman relies on boilerplate language, vague allegations, and conclusory statements to support her age discrimination claim. This is "far too speculative and fail[s] to satisfy even the minimal pleading standards prescribed to employment discrimination claims." *Porod v. Town*

*of Cicero*, 2019 WL 587410, at *3 (N.D. Ill. 2019) (Kocoras, J.). Inman's Amended Complaint fails to "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Count IV is dismissed.

## IV.    Count V—IHRA

As both parties agree that the remaining IHRA claims depend on the disposition of the related federal discrimination claims, the Court accordingly narrows Count V to Inman's allegations found in Count III, but not Counts I, II, or IV. Therefore, only Inman's IHRA disability discrimination claims may proceed.

## 2.    Request For Leave To File A Second Amended Complaint

The Court retains "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. W.*, 791 F.3d 801, 807 (7th Cir. 2015) (internal quotation omitted). Here, Inman has not established that "amendment would cure the deficiencies identified in the earlier complaint." *Id.* First, the Court notes that Inman's initial complaint was already once rejected for its noncompliance with Federal Rules of Civil Procedure 8 and 10 by, among other things, excessively incorporating her EEOC Charge by reference. Second, Inman has not explained with enough detail what additional facts would resurrect her claims nor has her request been "accompanied by the proposed amendment." *Id.* (quoting *Otto v. Variable Annuity Life Ins. Co.,* 814 F.2d 1127, 1139 (7th Cir.1986)). For example, that Inman—who is already on her second complaint—might be able to

buttress her ADEA claim with "numerous additional workers," is insufficiently detailed for the Court to understand how a new pleading would assist Inman. In sum, the Court does not have to entertain speculation about how a third complaint would somehow survive dismissal. *See Arce v. Chicago Transit Auth.*, 738 F. App'x 355, 358 (7th Cir. 2018) (concluding that the district court did err in denying leave to amend a hostile work environment claim where allowing amendment would have been futile). Accordingly, Inman's request for leave to file a second amended complaint is denied.

## CONCLUSION

For the reasons mentioned above, the Court grants Lemont Library's motion to dismiss and denies Inman's request for leave to file a second amended complaint. Telephonic Status is set for 10/8/2020 at 9:50 a.m. It is so ordered.

Dated: September 1, 2020

Charles P. Kocoras
United States District Judge